**Doren L. MARTIN, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 782S279.

Supreme Court of Indiana.

Sept. 14, 1983.

Susan K. Carpenter, Public Defender of Indiana, Melanie C. Conour, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen. of Indiana, Stephan E. Wolter, Deputy Atty. Gen., Indianapolis, for appellee.

PRENTICE, Justice.

Petitioner (Appellant) was convicted of Burglary, Ind.Code § 35–43–2–1 (Burns 1979), Theft, Ind.Code § 35–43–4–2(a) (Burns Supp.1982), Robbery, Ind.Code § 35–42–5–1 (Burns 1979), and of Being an Habitual Offender, Ind.Code § 35–50–2–8 (Burns Supp.1982), and was sentenced to a total of forty (40) years imprisonment. This appeal from the denial of post conviction relief presents five issues, one of which is whether or not Petitioner was adequately advised of the potential penalties upon the charges at the guilty plea hearing. The record discloses that Petitioner, who was never represented by counsel, pled guilty without knowledge of all of the potential penalties that he faced.

Petitioner first appeared before the trial court on February 27, 1981, charged with Burglary, Theft, and Robbery. He had no attorney but stated that he would like to have a lawyer. He also asked: "If I ask for a lawyer, then I can't enter a plea today, right?", to which the trial court responded, "Well, sure you can enter a plea today, if you want to." The court then informed Petitioner of various rights and added: " * * * Remember that the job of a judge or a jury is to search for the truth. Now, the truth I can't alter, at this time. Whatever the facts are, I can't change now nor can you, and whatever those facts are, will be just as binding on you or this Court today as they would be a year from now, if the case was disposed of then. So, that under that last constitutional right I told you about, certainly, you have a right to get it over with today, if you did these things. Bear in mind that the primary purpose of our system of justice is to search for the truth and once that truthful facts comes into the record, then, to apply the appropriate principles of law to those sets of facts, whatever they might be. Now, do you understand what I've said?
"A. Yes, Sir.
"Q. So, if you've done something and you want to tell us about it, you're a big boy, age 23, there's no reason why you can't. But, if you've been falsely charged and you want to make any proper defense to any of these things, then, you ought to tell me and I—I'm not going to let you get rim-racked or anything. But, you know what the facts are, I don't. Now, what do you want to do?
"A. I want to plead guilty." R. at 25–26.

The court informed Petitioner of the potential penalties, but there was no mention of the habitual offender charge, as it had not yet been filed. It was apparent, however, that Petitioner did not understand the range of sentences, because he stated that the maximum penalty was twenty-three (23) years, and the trial court, clearly in error, agreed. R. at 49. The judge then accepted the plea of guilty, ordered a presentence investigation report and set sentencing for March 16, 1981.

Although there had been some discussion of one of Petitioner's prior felony convictions, at the guilty plea hearing, it was not until the sentencing hearing, when Petitioner requested probation, that the judge informed him that the sentence would not be suspended because of that prior conviction.

■ On March 12, 1981 the State filed Count IV, alleging that Petitioner was an habitual offender.

Ind.Code § 35–4.1–1–3(d) (Burns 1979) provides:

"The court shall not accept a plea of guilty from the defendant without first addressing the defendant and * * * (d) Informing him of the maximum possible sentence and minimum sentence for the offense charged and of any possible increased sentence by reason of the fact of a prior conviction or convictions, and of any possibility of the imposition of consecutive sentences."

Strict compliance with this statute is required, in order that we may determine that any waiver of fundamental constitutional rights has been knowingly and intelligently given. *Davis v. State,* (1983) Ind., 446 N.E.2d 1317, 1321.

■ The State concedes that Petitioner was not advised of the habitual offender penalty during the guilty plea hearing but argues that the judge, at the sentencing hearing, gave Petitioner the opportunity to "back out" of the guilty plea. Assuming, *arguendo,* that the record supports such a conclusion, and we find that it does not, the statute's explicit language does not permit after the fact advisements. *Helton v. State,* (1982) Ind.App., 443 N.E.2d 1201.

At the sentencing hearing, the judge explained the habitual offender charge, and Petitioner acknowledged that he understood it and its consequences and that he had expected that it would be filed. Thereafter, the court asked if there were any reason why it should not proceed with sentencing

and if Petitioner were ready for sentencing, and Petitioner responded, "yes, sir."

At no time was Petitioner represented by counsel. When the trial court posed the inquiry about sentencing, a competent attorney would have insisted that Petitioner be afforded the opportunity to withdraw his earlier plea because the requisite advisements about the penalty had not been made. *See Brown v. State,* (1983) Ind., 443 N.E.2d 316, 318; *Vanderberg v. State,* (1982) Ind.App., 434 N.E.2d 936, 938–39. Petitioner, completely unschooled in the law, could not have been expected to raise such an objection. Further, competent counsel would have informed Petitioner of all of his rights concerning the habitual offender charge, which the trial court did not do until immediately prior to pronouncing the sentence. Under Ind.Code § 35–50–2–8 (Burns Supp.1982), Petitioner was entitled to have the jury, which would have determined the underlying charges upon a plea of not guilty, determine the habitual offender charge. He was not so informed until after his plea had been entered, and we do not think that the fortuity of obtaining a guilty plea prior to the filing of the habitual offender charge should have foreclosed access to that right before he even knew that he had such right. In such circumstances, an uncounseled accused could not have known what rights he had given up with respect to the habitual offender charge.

■ There are also other circumstances present in the record which imply that Petitioner did not act knowingly or intelligently. Upon initially addressing Petitioner, the trial court may have unintentionally but, nevertheless, subtly communicated that Petitioner's right to counsel was related to his guilt or innocence or that assertion of the right would result in untoward delay, or further, that an attorney could not help him. We cannot approve any procedure or commentary which, reasonably could suggest or hint to an uncounseled defendant that if he is guilty, it behooves him to so plead, because he will be found guilty in either event. The judge's comments must

be considered even more egregious where, as here, there was only a bare mention of the word "defense" and no discussion had or information given concerning possible defenses to the charges.

We have earlier reproduced the relevant exchange between Petitioner and the court. It reveals that Petitioner chose to plead guilty only after the aforementioned statements had been made by the judge and additional advice had been given by the court that he should have confidence in the judge because he would not allow him to "get rim-racked." The court also added that Petitioner was a "big boy" and knew the facts, and after he had pled guilty, the court stated that his decision was commendable. Only moments prior thereto, Petitioner had stated that he wanted counsel.

■ However commendable, Petitioner's guilty plea was neither knowingly nor intelligently made, and consequently, it cannot stand. The trial court's advisements about the habitual offender penalty were not timely and thereby resulted in depriving an uncounseled accused of the knowledge of defenses, options, and strategies with respect to that charge and of the maximum possible sentence upon the other charges. Additionally, the record reveals that the trial court may have subtly influenced Petitioner to forego his right to counsel based upon misconceptions not relevant to nor attendant to assertion of that right.

The judgment of the trial court is reversed, and the case is remanded with instructions to vacate Petitioner's plea of guilty, to enter a plea of not guilty, and to set the matter for trial.

DeBRULER and HUNTER, JJ., concur.

PIVARNIK, J., dissents with opinion in which GIVAN, C.J., concurs.

PIVARNIK, Justice, dissenting.

I must dissent from the majority in its finding that Petitioner Martin has carried his burden of showing by a preponderance of the evidence that he did not knowingly

and intelligently enter guilty pleas. *McDowell v. State,* (1981) Ind., 422 N.E.2d 1229.

The record shows the trial court exhaustively advised Petitioner of his rights and of the alternatives facing him in his desire to plead guilty to the charges. Petitioner indicated to the trial court that he had in the past experienced criminal prosecution and understood his rights and understood the alternatives facing him. The trial court informed Petitioner of the charges facing him and the penalties he might face and, in view of this, Petitioner expressed his desire to plead guilty immediately and begin serving his time. At the time of the guilty plea entry the habitual offender charge had not yet been filed and, accordingly, there was no discussion of it at that time. At the time of sentencing, however, the habitual offender charge had been filed and the trial court advised Petitioner of this and of the penalties he could expect from that. Petitioner indicated he was aware that it was filed and thought it probably would be and was aware of the penalties. Upon further questioning from the trial court, Petitioner indicated he still wished to proceed and have sentence pronounced on him at that time. He again indicated he was aware of all the alternatives facing him, understood them and wanted to proceed with sentencing. The trial court sentenced him for the charges of theft, robbery, burglary, and for being an habitual offender.

The final sentence pronounced by the trial court was far less than it could have been had the maximum sentence been given for all of the crimes to which Petitioner pleaded guilty. He was sentenced to a total of forty years imprisonment. Considering the fact that he was being sentenced for theft, robbery, burglary, and for being an habitual offender, it certainly cannot be said that the total of forty years was an undue or unconscionable amount of time, thereby revealing a tendency to take advantage of Petitioner in his hapless position of being unrepresented by counsel.

The record shows Petitioner was thoroughly advised of all of his rights by the trial court, that he knew what he was doing, and that he knowingly, intelligently, and willingly entered his pleas of guilty. He therefore did not carry the burden required of him in his post-conviction relief petition and the trial court properly denied him relief. I therefore dissent and would affirm the judgment of the trial court.

GIVAN, C.J., concurs.